W. E. Cooper, Special J.,
delivered the opinion of the Court.
The controversy in this case is in relation to a certain negro slave named Lydia and her descendants. The complainants claim that she was the property of their father, James Saunders, deceased, and passed with her increase under the provisions of his will. The defendants insist that she was held in trust for the sole and separate use of Levisa Saunders, the wife of James *195 Saunders; and that she and her increase were rightfully disposed of by the said Levisa, subsequent to her husband’s death. The record is voluminous, and the facts complicated, but we are able to gather the following detail of events, in the order of time in which they occurred.
On the 23d of March, 1813, James- Saunders intermarried with the said Levisa, then Levisa Bowen. Under the will of her deceased father, upon a division of his estate, the said Levisa had received the negro woman Lydia, and two children, Charles and Lucinda. James Saunders was a widower'from the State of Georgia, with a family of children by his first wife, and, as-it turned out, without property and wrecked in fortune.. On the 8th day of March, 1813, the said Levisa,, in contemplation of marriage, executed to her brother,. John H. Bowen, a bill of sale for the said negroes,, purporting to be in consideration of seven hundred dollars, but in reality without any consideration actually passing. The bill of sale was in the ordinary form, and was attested by Mary H. Bow'en, the mother, and Catharine Campbell, the sister of the said Levisa. The circumstances under which it was made will be presently stated more at large. This bill of sale was, subsequently, at the request of the said Levisa, and at the August Term, 1815, of the County Court of Sumner county, proved by the subscribing witnesses, and registered in the register’s. office of the same county on the 17th of November, 1815. The record contains, also, another instrument, purporting to be a deed from Levisa Bowen to her mother, Mary H. Bowen, for a tract of land in Sumner county, containing 640 acres. This deed. *196 bears date tbe 10th of November, 1811, purports to be in consideration of one dollar, and is attested by David Campbell and John H. Bowen, attesting witnesses. Its execution seems to have been duly proved by these attesting witnesses, before the Circuit Court of Sumner county, on the 17th of March, 1813, and was registered in said county on the 1st of June, 1813. There is no proof in the record in regard to the object of this deed or the circumstances attending its execution.
James Saunders and wife resided, for a few months after the marriage, at the house of Mary H. Bow'en, the mother of the said Levisa, and then removed and settled upon a part of the land devised to the said Mary II. by her deceased husband; where they continued to reside until the death of James Saunders, early in the year 1827. In the meantime, the negro Lydia and her children continued in the possession of James Saunders and wife, the said Sanders exercising the usual acts of ownership over them. Shortly after Saunders and wife commenced housekeeping, Mary H. Bowen furnished them with a negro girl named Molly; and this girl also remained with them until the husband’s death; Mrs. Bowen, occasionally, and for a short time, resuming the possession. In the year 1827, Mrs. Bowen also departed this' life, having first made her will, bequeathing the negro Molly to her daughter Levisa for life, and after her death to her children. John H. Bowen died on the 25th of September, 1822.
James Saunders seems to have been an industrious man, who made a support for his family, although addicted to the intemperate use of ardent spirits. There seem to have been rumors of debts existing against him *197 in the State of Georgia, upon old transactions; and inquiries seem also at one time to have been made, with a view to ascertain the prospect of collecting some of these debts. He appears to have freely admitted the fact that he had been broken up by unfortunate speculations and endorsements in that State, and was sometimes pressed by pecuniary liabilities of more recent creation. Towards the end of his life, he accumulated some property around him, chiefly in the form of cattle and fine stock. By his last will, duly proved at the February Sessions, 1827, of the County Court of Sumner county, he gives his “ little goods and property” to his wife Devisa, to be kept together to raise his children, and for her ease and comfort, with power, as each child married, to loan said child “ what seems reasonable to spare of said propertyand at her death, all the property loaned or remaining to be equally divided between his two daughters and four sons, viz.: Mary Hendly, Tabitha Moore, Wm. Bowen, James Yancy, John Henry, and Samuel Adams Saunders. No executor having been named in the will, Devisa Saunders was, at the same term of the County Court, appointed administratrix with the will annexed, gave bond in the penalty of nine hundred dollars, and returned an inventory of personal effects, in which no negroes are mentioned. At the expiration of the two years allowed by law for settling the estate, commissioners were appointed to settle with her; and they make settlement with her accordingly, charging her with $339.68 of assets, and crediting her with $324.75 of disbursements; leaving in her hands $14.93 in money, and $260 in notes “which cannot be colleeted.”
*198 After the death of James Saunders, his daughter, Mary Hendly, intermarried with John W. Perdue, and then died, leaving her husband and James Y. Perdue, an only child, her surviving. After her death, and about the year 1836, James Y. Saunders, one of her brothers, departed this life intestate, and without ever having married. On the 26th of February, 1839, Tabitha Moore, the other daughter of James Saunders, intermarried with Baker W. Harris, and departed this life in 1844, leaving her husband and three children her surviving. Baker W. Harris was qualified as administrator of his deceased wife, and also, as administrator of his deceased sister-in-law, Mrs. Perdue. Wm. B. Saunders was qualified as administrator of James Y. Saunders.
After her husband’s death, Levisa Saunders continued in the possession of Lydia and her increase, and of Molly and her increase. Shortly after the intermarriage of Baker W. Harris with her daughter, she gave Harris and wife a negro woman, a child of Lydia, named Sarah Ann, and her two ■ children, Henry and Lydia. Harris and wife settled in Wilson county; and the said Levisa being anxious to follow them, her surviving sons Wm. B., Jno. H., and Sam’l A. Saunders, and the said Harris and wife relinquished to her all their interest in the tract of land in Sumner county, on which she was then living, and in which she had only a life estate under the will of her mother, with remainder to her children. In order to effect a sale of this land, her son, Wm. B. Saunders, and the said Harris joined her in warranting the title, she undertaking to indemnify them from liability by reason of the interest of James Y. Perdue, the infant son of her deceased daughter, by a provision *199 to that effect in her will, which was done accordingly. The land was sold, and the said Devisa bought a part of Harris’ land in Wilson county; and paid him partly in a negro named Jack, and a negro woman named Caroline, and her child Lydia; all of whom were descendants of old Lydia. The bill of sale to these slaves was made on the 20 th of May, 1843. The tract of land thus bought, was, after Mrs. Saunders’ death, sold as a part of her estate, and the proceeds were divided among her legatees, under the provisions of her will. In the year 1843, Mrs. Saunders sold to one Carter, for $800, a negro boy named Aleck, a son of old Lydia, the bill of sale being witnessed by Wm. B. Saunders, one of her sons; and the sale having been made with the knowledge and approbation of the other sons, two of the sons expressly telling the purchaser that their mother had the absolute title to Lydia and her descendants; and stating at the same time, that she had only a life estate in Molly and her increase. Upon this subject, the proof is entirely conclusive that Mrs. Saunders and her sons considered Lydia and her increase as the exclusive property of Mrs. Saunders, and Molly and her increase ns only belonging to Mrs. Saunders for life, under her mother’s will. After all these gifts and sales, Mrs. Saunders still had, at her death, old Lydia and Nelson, Lucinda and Mary Gray, her children and six or seven of Lydia’s grand-children.
Mrs. Saunders died on the 5th day • of September, 1851, having made a will directing that her two servants, Lydia and Molly, have the privilege of living with whomsoever they pleased; and that all the rest of her negroes be equally divided between her three sons, Wm. *200 B., John H., and Samuel A. Saunders, and her grandson, James Y. Perdue; but providing that her grandson should not receive his portion of the estate, unless he signed the deed to the tract of land sold bj her as aforesaid; and, in the event he failed to do so, that his share go to the indemnity of those who joined her in the warranty of title.
In April, 1852, -Henry Ward, as administrator with the will annexed of Levisa Saunders, filed his bill in the Chancery Court at Lebanon, against her sons, grandson, and B. W. Harris in his own right, and as administrator of his deceased wife, and against Harris’ children, for a construction of the will, and instructions as to his duties; and suggesting as his chief difficulty, that he did not know what disposition to make of Molly and her increase, under the provisions of the will of Mary H. Bowen. He also asks instructions as to the disposition of Molly and Lydia, under Mrs. Saunders’ will, and of James Y. Perdue’s share, until he should comply with the condition above mentioned. To this bill, a joint answer was filed by Wm. B., John H., and Sam! A. Saunders, and James Y. Perdue by Wm. B. Saunders, as his guardian, admitting the facts stated, and claiming that Mrs. Saunders had an absolute interest in Molly and her increase, by virtue of the provisions of her mother’s will. This answer contains, also, the following clause: “Not only law, but justice requires that the provisions of the will of the said Levisa shall be carried out; because, during her life, she had given to the said B. W. Harris negroes and other property, more in value than will be the legacies of respon *201 dents, provided tbe provisions of said will are carried out.”
Harris answers for bimself, and as guardian of bis children, insisting that Mrs. Saunders took only a life estate in Molly and her children, and that he, as administrator of his wife, is entitled to her interest in said slaves.
Yarious proceedings were had in this cause, during which it came twice to this Court. (See Ward v. Saunders, 2 Swan, 174, and 3 Sneed, 387;) and it was finally decided that Molly and increase passed under Mary H. Bowen’s will to her daughter, Levisa Saunders, for life, and after her death, to her children; and they were divided accordingly.
In the meantime, during the pendency of that litigation, on the 24th of June, 1853, the original bill in the cause now before us was filed. The bill is filed by Vm. B., Jno. H., and Samuel A. Saunders, and James Y. Perdue by Wm. B. Saunders, his guardian, against Baker W. Harris; sets forth the will of James Saunders, deceased; and claims that Lydia and her increase passed under its provisions to Levisa Saunders for life, and after her death- to her children. It also states, that the negroes hereinbefore spoken of as having been given by Levisa Saunders to B. W. Harris and wife, were only loaned; and asks that they and their increase be attached, and, upon final decree, divided among those entitled under James Saunders’ will. Harris answers, setting forth his marriage, the gift of the descendants of Lydia to himself and wife, the sale of the negro Alexander, of the land in Sumner county, and the proceedings under Ward’s bill as hereinbefore detailed, and in *202 sisting that Lydia and descendants were the absolute property of Levisa Saunders, and were not a part of James Saunders’ estate. The answer also claims that Lydia had been conveyed by Levisa to her brother, Jno. IT. Bowen, in trust for her, and that she and her increase had been held in trust accordingly.
On the 24th of June, 1856, an amended bill was filed for the purpose of making Wm. B. Saunders, as administrator of James Y. Saunders, deceased, a party complainant, and B. W. Harris, as administrator of Mary H. Perdue, a party defendant. On the 7th of January, 1857, James Y. Perdue having come of age, was permitted to become a defendant instead of a complainant; and thereupon he filed his answer electing to comply with the conditions of the will of Levisa Saunders, and to take his share of the estate. He insists that complainants, by their answer to the bill of Henry Ward, administrator as aforesaid, recognized the absolute title of Mrs. Saunders to Lydia, and that they should be held to this admission. He makes, his election, he says, upon the supposition that Lydia and descendants belonged to his grandmother; for otherwise there would be nothing to distribute except the proceeds of the land sold and the perishable property; and in that contingency, he does not wish to compromit his right to sue for his share of the Sumner county land.
Upon the hearing, the Chancellor dismissed the bill; and the complainants have appealed.
In the view which we have taken of this case, it was, perhaps, unnecessary to set forth the facts with the minuteness of detail adopted, but the statement shows the light in which the parties themselves viewed *203 the transactions the Court is called to pass upon, and tends to strengthen the correctness of the conclusion to which we have arrived.
The rights of the parties turn, chiefly, upon the validity and effect of the conveyance of Lydia and her children to Jno. H. Bowen, on the 6th of March, 1813. On behalf of the complainants, it is insisted that the conveyance was a fraud upon the marital rights of the intended husband, and therefore void; that the instrument was never delivered to nor accepted by John H. Bowen; and that there is not sufficient evidence of a trust to the separate use of Levisa Saunders. The correctness of these positions is denied by the defendants, and must be settled by the Court.
It is not every alienation of the wife’s property, during the treaty of marriage, which can be regarded as faudulent, only because the husband was not a party to it. This was conceded by the Court in Jordan v. Blaok, Meigs, 142; and it was stated, in that case, that the meritorious object of the conveyance,, or the situation of the intended husband in point of pecuniary means, would form exceptions to the general rule. Whether there is fraud or not upon the marital rights must depend on the circumstances of each case, the conveyance of an unmarried woman, although made immediately before marriage, being prima facie good. England v. Downs, 2 Bear., 522. In this case, the proof leaves little doubt that James Saunders had, previous to the marriage, represented himself as a man of wealth, when, in fact, he was without property and insolvent. It is, moreover, certain that although Saunders knew of the existence of the conveyance shortly after the mar *204 riage, he took no step to set it aside; nor does he seem, at any time afterwards, to have set up a claim to the negroes, except on one or two occasions when under the influence of liquor, and with a view to annoy his wife. His creditors made no effort to subject these negroes to the satisfaction of their debts; and it is in evidence that he told some of them, when interrogated upon the point, that the negroes were not his, but belonged to his wife. Under these circumstances, we do not think, either upon principle or authority, that there is any pretence for holding the transaction void, as a fraud upon the marital rights of the husband. Hunt v. Matthews, 1 Vern., 408; St. George v. Wake, 1 Myl. & K., 610.
The proof of the circumstances under which, and the object for which the conveyance to Jno. H. Bowen was made, is found exclusively in the depositions of Catharine Campbell, one of the attesting witnesses and a sister of Levisa Saunders, and of Wm. R. Bowen, a brother of the said Levisa. Mrs. Campbell is a witness examined on behalf of the complainants. She proves that the bill of sale was made at her suggestion, because, to use her own words, “ there was a rumor that Major Saunders was inclined to be dissipated;” and “solely for the reason that we thought in that way we would secure them (the negroes) to my sister Levisa, free from the control of Major Saunders.” The witness further states that John IT. Bowen was not present when the bill of sale wras executed; and when informed of the fact, which, she thinks, was not until after the marriage, remarked to her “that it would have been best to have been open and above board,” and secured the negroes to his sister by *205 marriage contract. “He did not say to me,” adds the witness, “that he disapproved of the bill of sale, that I now remember.” She further states that the bill of sale was kept either by Mary H. Bowen or Devisa, and was subsequently, at the request of the latter, proved and registered as before stated. Win. R. Bowen proves that the conveyance was made for the purpose of securing the negroes for his sister Devisa, free from Major Saunders’ debts ; and that he and John IT. Bowen were consulted, and advised his sister to this course. The credibility of this witness is attacked, not by bringing forward witnesses to prove that they would not believe him on oath, but by showing, by the testimony of others, that some of the statements of fact made by him in his deposition are not reliable. And it must be admitted that the testimony adduced goes very far towards establishing the point aimed at. It will be noticed, however, that he is fully sustained by Mrs. Campbell, complainants’ own witness, in his statement of the object of the transaction. The circumstances, moreover, tend to sustain him in his recollection that John H. Bowen advised, or, at any rate, knew' of the existence of the deed before the marriage; for it is shown by the certificate of probate to the deed of Devisa to her mother for the 640 acre tract of land, as before recited, that John II. Bowen was, on the 17th of March, 1813, only a few days before the marriage, at Gallatin, in the county of Sumner. This .fact is inconsistent with Mrs. Campbell’s recollection that he was not in the county at the time of the marriage, and was shocked when he heard of it — not when he heard of the execution of the bill of sale to him, as was ingeniously, but erroneously argued by the complainants’ counsel. It *206 is much more probable, and perfectly consistent with all the facts, that John H, Bowen was shocked wrhen he heard of the engagement, and advised the course that was actually pursued. We have little doubt, from all the facts, that John H. Bowen did actually assent to the transaction. But whether .he did or not, it distinctly appears from the testimony of Mrs. Campbell that he did not positively renounce the trust; and without such renunciation, his acceptance will, under the circumstances, be presumed. It may be added that his acceptance was not so material as seems to be supposed. “A deed of trust,,’ says Judge Turley in Field v. Arrowsmith, 3 Hum., 446, “ being always made for the benefit of the cestui que trust, the assent of the trustee is not necessary to its validity. It is true he may refuse to execute the trust, but, in that case, a Court of Chancery will execute it for him; and the assent of the cestui que trust may be given at any time after the deed is made, and will' always be presumed in the absence of proof to the contrary.” These positions are fully sustained by aiithority. 2 Story’s Eq., 1058, 1061; Co. Litt., 113, a, note 2. The acceptance of the cestui que trust in this case is sufficiently evidenced by the execution of the instrument. The evidence of Mrs. Campbell leaves it doubtful in whose hands the bill of sale was left; whether it remained in the possession of Levisa or her mother. It is, however, wholly immaterial. The execution of the instrument for the purposes intended being distinctly established, a formal delivery is not important. Farrar v. Bridges, 5 Hum., 412; 4 Kent Com., 455, 1 Meigs’ Dig., p. 219.
*207 It only remains to consider whether the trust is sufficiently made out. It is not denied by complainants’ counsel that a trust in slaves may be created by parol; nor could it be with any plausibility. The 7th section of the English statute of frauds embraces only trusts in “lands, tenements, and hereditaments.” Even in England, therefore, a valid trust of personal property may not only still be created, but, if necessary, established by mere parol declarations. Hill on Trustees, 57. And parol trusts in both lands and slaves have often been set up and enforced by this Court. McLanahan v. McLanahan, 6 Hum., 99; Haywood v. Ensley, 8 Hum., 460; English v. Tomlinson, 8 Hum., 378; Harris v. Carney’s Adm’r., 10 Hum., 349; Eaves v. Gillespie, 1 Swan, 128. What effect the registry laws may have upon such trusts, as against third persons, we need not now stop to inquire. But it is urged that the terms of the trust are insufficient to secure the property to the sole and separate use of Mrs. Saunders. We cannot assent to this. It is clearly shown by one, and perhaps two witnesses, that the sole object of the conveyance was to secure the property to Mrs. Saunders, free from her husband’s debts. This would be sufficient to establish the trust, without laying any stress upon the nature of the transaction itself, a conveyance by the beneficiary herself which would be rendered wholly nugatory, unless construed in the way she intended it. The trust was recognized by John H. Bowen and James Saunders, and, as we have seen, by the complainants, after their father’s death. There is no pretence for claiming that any title vested in Major Saunders by virtue of the statute of limitations. There was never *208 any adverse bolding upon which the statute could operate. The usual acts of ownership, which were exercised equally over Molly as over Lydia, are not, under the circumstances, entitled to any weight, as was held by this Court in the analogous case of Foster v. Jordan, 2 Swan, 476. It follows, necessarily, that James Saunders having acquired no title to Lydia and her increase, could convey none to the complainants by his will.
This view of the case renders it unnecessary to consider the doctrine of estoppel upon the defendants, by reason of the proceedings in the case of Ward v. Saunders, as before detailed. It may not be improper to say, however, that while it would be difficult to maintain that the complainants are estopped by anything in that case from setting up any rights they might have under their father’s will, since no such rights were directly or even incidentally involved in the issues made, it would, perhaps, be equally difficult for the complainants to avoid the effect of their admission that their mother had actually given away some of the descendants of Lydia, go far as that fact could operate upon their rights.
The costs of the entire cause will be divided equally between the complainants and the defendants; and, with this modification, the decree of the Chancellor is affirmed.